# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: Group Health Plan Litigation | Case No. 23-cv-00267 (JWB/DJF) |
| | **MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

Plaintiffs Kelly Vriezen, Sandra Tapp, and Kaye Lockrem, and the Class they represent, have reached a settlement with Defendant Group Health Plan, Inc. d/b/a HealthPartners to resolve claims arising from Defendant's use of pixel code on its website on its website servers (the "Pixel Installation"). Plaintiffs and the Class will benefit from the $6,000,000.00 Settlement Fund. The settlement provides significant relief to Settlement Class Members and lies well within the range of reasonableness necessary to establish Final Approval under Rule 23(e). The Court should, therefore, preliminarily approve the settlement, direct that notice be sent to all Settlement Class Members in the reasonable manner proposed below, set deadlines for exclusions, objections, and briefing on Plaintiffs' motion for final approval and petition for service awards, attorneys' fees, and costs, and set a date for the final fairness hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 30, 2024, Plaintiffs and Counsel for Plaintiffs and the Class entered into a Settlement Agreement and Release that was modified by an Addendum dated August 28, 2024 (collectively, the "Settlement") with Defendant Group Health Plan, Inc. d/b/a Health Partners ("Group Health" or "Defendant").[1] Plaintiffs and Group Health have agreed to resolve all claims related to the Pixel Installation on behalf of the Class. Group Health will provide a Settlement Fund of $6,000,000.00 to be distributed to Settlement Class Members pursuant to Section VI of the Settlement Agreement and to pay for settlement class notice and administration.

### A. The Benefits the Settlement Provides.

The Settlement defines the Settlement Class as:

All individuals who logged into healthpartners.com or virtuwell.com between January 1, 2018 and November 10, 2023.

(Exh. 1 ¶ 12) The proposed Settlement Class does not differ materially from the proposed class in the Consolidated Class Action Complaint. (*Compare* Exh. 1 ¶ 12.mm *with* Consol. Class Action Compl. [ECF Doc. 59] ¶ 238.) Under the proposed Settlement, Group Health agrees to pay a total of $6,000,000.00 into the Settlement Fund into a non-reversionary common fund. (Exh. 1 ¶ 16.) The monetary relief will be distributed to all Settlement Class

---

[1] The Settlement is attached as Exhibit 1 to the Declaration of Christopher P. Renz in Support of the Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Notice Plan ("Renz Decl." or "Renz Declaration). "Exh.1" refers to the Settlement Agreement and "Exh. 1-_" refers to exhibits to the Settlement Agreement, which are also attached to the Renz Declaration.

Members who submit a valid claim for payment from the Settlement Fund. (*Id.* ¶ 36.) Each Settlement Class Member that submits an approved claim will receive a *pro-rata* distribution of the settlement fund after settlement administration expenses, service awards, and attorneys' fees and litigation expenses are deducted. (*Id.*) No portion of the Settlement Fund will revert back to Group Health unless there is a Termination of the Settlement. (*Id.* ¶ 19.). The Settlement's finality is not dependent on the Court awarding attorneys' fees and expenses to Settlement Class Counsel. (*Id.* ¶ 66 (providing that payment of fees is contingent upon order of the Court upon Settlement Class Counsel's separate application).)

In exchange for the consideration above, Plaintiffs and the Settlement Class Members who do not timely and validly exclude themselves from the Settlement will be deemed to have released Group Health from claims arising from or related to the Pixel Installation at issue in this litigation. (*Id.* ¶ 83.)

### B. The Notice and Administration Plans

Settlement Class Counsel has selected Atticus Administration, LLC ("Atticus") to be the Settlement Administrator, who will provide the Class with notice and administer the claims. (Renz Decl.¶ 4; *see also* Declaration of Chris Longley on Behalf of Atticus Administration, LLC ("Longley Decl.").) Atticus was chosen from among two competitive bids from class settlement administration firms. (Renz Decl. ¶ 4.) Atticus will email and/or mail the Postcard Notice to all Settlement Class Members at the e-mail address that Defendant provides, or if no valid e-mail address then to any valid U.S. Mail address Defendant provides for Settlement Class Members. (Exh. 1 ¶¶ 41, 43, 44.). Atticus will also provide a claim form to Settlement Class Members requesting the same through

writing or by telephone, as well as making it available on the Settlement Website that Atticus will develop. (*Id.* ¶¶ 43, 46.) The Settlement Website will include the Complaint, Long Form Notice, Claim Form, and the Settlement Agreement. (*Id.* ¶ 46.) The Long Form and Short Form Notices clearly and concisely inform Settlement Class Members that they may do nothing and be bound by the Settlement, exclude themselves by completing the exclusion form and not be bound by the Settlement, or make a claim by completing and returning a claim form and be bound by the Settlement. (Renz Decl. ¶ 7; Longley Decl. ¶ 8.) Atticus will also establish a 24-hour toll-free helpline to answer questions about the Settlement. (Exh. 1 ¶ 46.)

Finally, Atticus will be responsible for processing all claims for payments from the Settlement Fund and exclusions requested, determining eligibility and validity, and for disbursing funds from the Settlement Escrow Account directly to Settlement Class Members. (*Id.* ¶ 61.) Atticus must also report to the Court that it satisfied its notice obligation. (*Id.* ¶ 50.)

### C. History of the Litigation

On February 2, 2023, Plaintiff Kelly Vriezen filed an action against Group Health in this Court alleging that Group Health had disclosed her personally identifiable information ("PII") and protected health information ("PHI") (PPI and PHI collectively "Private Information") to third-parties, including Meta. (Compl. [ECF Doc. 1] ¶ 1.) Plaintiffs Kaye Lockrem and Sandra Tapp each filed their own complaints in separate actions making similar allegations against Defendant. (*See* Dockets in Case Nos. 23-cv-00461 and 23-cv-00483.) Following an unopposed motion to consolidate the cases of

4

Plaintiffs Vriezen, Lockrem, and Tapp, the Court granted the motion and consolidated all cases into the present one with Plaintiff Vriezen's case adopted as the lead case. (Order, March 29, 2023 [ECF Doc. 28].)

Plaintiffs subsequently filed the Consolidated Class Action Complaint. (Consolidated Class Action Compl. [ECF Doc. 59] (the "Complaint").) The Complaint alleged that Group Health's disclosure of Plaintiffs' Private Information occurred by Group Health's embedding a Facebook tracking pixel on its website where Plaintiff Vriezen and others were directed to look for medical information, book medical appointments, and locate physicians. (*Id.* ¶¶ 1, 18-22.) The Complaint alleged that the tracking pixel technology directed Plaintiffs' and others' communications and interactions to be automatically and surreptitiously sent to Facebook, along with the individual's unique Facebook identification. (*Id.* ¶ 17.)

Plaintiffs alleged that the Pixel Installation harmed her and the Settlement Class Members. (*See generally Id.*) Plaintiffs alleged various causes of action against Group Health to recover for that harm, including Invasion of Privacy, Unjust Enrichment, Breach of Fiduciary Duty, Violation of numerous provisions of the Electronic Communications Privacy Act ("ECPA"), Violation of the Computer Fraud and Abuse Act ("CFAA"), Breach of Confidence, and Violation of the Minnesota Uniform Deceptive Trade Practices Act ("MUDPTA"). (*Id.*) Plaintiffs brought the action against Group Health on behalf of themselves and others similarly situated. (*Id.* ¶¶ 237-254.)

In August of 2023, Defendant brought a motion seeking to dismiss Plaintiffs' claims. (Def's Mot. Dismiss [ECF Doc. 65].) On December 21, 2023, following briefing

and oral argument on Defendant's Motion to Dismiss, the Court issued its Order Granting in Part and Denying In Part Motion to Dismiss. (Order [ECF Doc. 93].)  The Court dismissed Plaintiffs' claims for breach of fiduciary duty and breach of confidence, but otherwise denied Defendant's Motion to Dismiss. (*Id.* at 21-22.)

### D. Negotiations and Settlement

Following the Court's Order on Defendant's Motion to Dismiss, the Parties began, with the assistance of the Court, to prioritize discovery for the purpose of exploring potential settlement and set the matter on for a settlement conference with the Court. (*See*, *e.g.*, Order, Feb. 12, 2024 [ECF Doc. 100] (ordering a May 30, 2024 settlement conference); Order, February 21, 2024 [ECF Doc. 103] (directing plaintiffs to serve priority discovery requests in anticipation of settlement conference).)

On May 30, 2024, in conformity with the Court's orders, the parties participated in a settlement conference with the Honorable Dulce J. Foster wherein they reached terms of settlement. (*See* Text-Only Entry, June 3, 2024 [ECF Doc. 122].) The Parties subsequently agreed on a full settlement agreement incorporating those terms. (*See* Exh. 1.)

## ANALYSIS

## I.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.

Parties settling a class action must seek approval of the settlement from the court. Fed. R. Civ. P. 23(e). That approval can only issue "after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Review of a proposed class action settlement has two-stages. *Hashw v. Dept. Stores Nat. Bank*, 182 F.

Supp. 3d 935, 943 (D. Minn. 2016). At the first stage, the parties submit the settlement to the Court for a preliminary fairness evaluation. *Id.* (citing Manuel for Complex Litigation (Fourth) § 21.632 (2004)). If acceptable, the Court then directs notice to absent class members. *Hashw*, 182 F. Supp. 3d at 943. Then, after the class has been notified and has had the opportunity to consider the settlement, the Court must decide whether to grant final approval of the settlement as "fair, reasonable and adequate." Fed. R. Civ. P. 23(e); *see also, e.g.*, *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). This Court has broad discretion in evaluating a class action settlement. *Van Horn v. Trickey*, 840 F.2d 604, 606-07 (8th Cir. 1988). The law strongly favors resolving litigation through settlement, particularly in the class action context. *White v. Nat'l Football League*, 836 F. Supp. 1458, 1476 (D. Minn. 1993) ("The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context.") (citation omitted).

### A. The Settlement Class Satisfies the Requirements for Class Certification at the Settlement Stage.

Plaintiff has the burden of demonstrating satisfaction with all of the applicable requirements of Rule 23. *In re Monosodium Glutamate Antitrust Litig.*, 205 F.R.D. 229, 231 (D. Minn. 2001) (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is there be no trial," but must still ensure satisfaction with other Rule 23 requirements. *Amchem Prods.*,

*Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Settlement Class satisfies each of the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) and of Rule 23(b)(3) (predominance and superiority).

### 1.    *Rule 23(a) Requirements*

First, the Settlement Class satisfies the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation). As an initial matter, the proposed Class consists of approximately 978,305 class members. This far exceeds numerosity's minimum requirements. *See Alberts v. Nash Finch Co.*, 245 F.R.D. 399, 409 (D. Minn. 2007) (stating that a class exceeding 40 members is generally large enough to make joinder impracticable). Rule 23(a)(2)'s commonality requirement mandates that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is met when there is "at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)). For purposes of Rule 23(a)(2), the Supreme Court has emphasized that "even a single (common) question will do." *Wal-Mart Stores, Inc. v Duke*, 564 U.S. 338, 359 (2011) (internal citation omitted). Here, numerous questions of law and fact will determine Group Health's liability to the Settlement Class. In particular, Group Health's alleged violation of privacy statutes and torts, as well as the CFAA and MUDTPA, arising from Group Health's Pixel Installation. Common evidence will dictate the resolution of every Settlement Class member's claim.

Rule 23(a)(3) requires that the claims of the class representatives be typical of those of the class. Fed. R. Civ. P. 23(a)(3). The typicality requirement asks whether plaintiffs' claims "arises from the same event or practice or course of conduct that gives rise to . . . the same legal theory" and "have the same essential characteristics" as the claims of other class members. *See, e.g., De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (11th Cir. 1983). The requirement is undemanding, requiring only some nexus between the named plaintiffs' claims and the common questions uniting the class. *In re Disposable Contact Lens Anti. Lit.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). Here, Plaintiffs' claims are typical of the Settlement Class because they arise from the same event – the Pixel Installation – and are based on the same legal theories and causes of action. Further, Plaintiffs' and the Settlement Class Members' injuries are all connected to the same alleged tortious conduct – the Pixel Installation. Because all claims arose from the same alleged event, Plaintiffs' claims are not atypical.

Finally, Rule 23(a)(4) requires that the named plaintiffs "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In assessing the adequacy requirement, courts utilize "a two-part test: (1) whether plaintiffs have interests antagonistic to the interests of other class members; and (2) whether the proposed class's counsel has the necessary qualifications and experience to lead the litigation." *Columbus Drywall & Insulation, Inc. v. Masco Corp.,* 258 F.R.D. 545, 555 (N.D. Ga. 2007). "Perfect

symmetry of interest is not required." *Vogt v. State Farm Life Ins.*, 963 F.3d 753, 767 (8th Cir. 2020). Here, Plaintiffs do not have any interests antagonistic to other Settlement Class Members and have retained lawyers who are abundantly qualified and experienced in class actions generally, and in data breach cases specifically. Accordingly, the requirement is met.

### 2. *Rule 23(b)(3) Requirements*

Second, the proposed Settlement satisfies the requirements of Rule 23(b)(3) (predominance and superiority). After establishing all of Rule 23(a) requirements, plaintiffs seeking certification must show the proposed class satisfies at least one subsection of Rule 23(b). Fed. R. Civ. P. 23(b). Here, Plaintiffs seek certification under Rule 23(b)(3). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Rule 23(b)(3) requires a plaintiff to show that "questions of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. "Certification is appropriate if 'the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 374-75 (8th Cir. 2018) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). Indeed,

district courts should assess predominance keeping in mind that a "class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable traits." *Amchem Prods., Inc.*, 521 U.S. at 615.

Here, there are common questions of law and fact pertaining to Plaintiffs' alleged privacy claims (both statutory and common law), as well as other alleged statutory violations (the ECPA and MUDTPA). In other words, the predominance requirement is met because the overwhelming issues of law and fact are common to all Plaintiffs and Settlement Class Members. *See, e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.* ("*Target*"), 309 F.R.D. 482, 486-89 (D. Minn. 2015). All of the issues related to the alleged privacy claims and statutory violations from the Pixel Installation can be resolved on a class-wide basis. First, there is the common question of whether the alleged communications and information that were transmitted as a result of the Pixel Installation were private or confidential information. Second, there are common questions concerning whether the Settlement Class should have had an expectation of privacy in interacting with the websites at issue. These common issues overwhelmingly predominate over any remaining individualized issues.

Under Rule 23(b)(3), a court must also find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Class actions are superior where "class members' claims are generally small and unlikely to be pursued individually." *Stuart v. Farm Fire & Cas. Co.*, 910 F.3d 371, 377 (8th Cir. 2018). "The inquiry into whether the class action is the superior method for a

11

particular case focuses on increased efficiency." *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004) (internal quotations omitted). Litigating the same claims of hundreds of thousands of class members and requiring presentation of the same evidence and expert opinions each time is blatantly inefficient. Resolving this controversy on a class-wide basis will reduce litigation costs by eliminating the need for repetitive discovery and arguments in courts throughout the nation, where hundreds of thousands of website users are at issue, and therefore will promote judicial economy and efficiency. Additionally, Settlement Class Members are individuals whose damages may be small, but the costs of recovery would be large. The awards of these Settlement Class Members would not justify the high costs of individually pursuing their claims. Because class treatment is superior to individual litigation, superiority is satisfied.

### B. The Proposed Settlement Is The Result Of Arm's-Length Negotiations Among Experienced Counsel.

Courts attach "[a]n initial presumption of fairness . . . to a class settlement reached in arm's-length negotiations between experienced and capable counsel after meaningful discovery." *Grier v. Chase Manhattan Auto Fin. Co.*, No. Civ. A.99-180, 2000 WL 175126, at *5 (E.D. Pa. Feb. 16, 2000); *see also Grunin*, 513 F.2d at 123; *White v. Nat'l Football League*, 836 F. Supp. 1458, 1476-77 (D. Minn. 1993). "The court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *In re Employee Benefit Plans Sec. Litig.*, Civ. No. 3-92-708, 1993 WL 330595, *5 (D. Minn. June 2, 1993) (citation omitted); *see also Welsch v. Gardenbring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987) (affording "great weight" to opinions of experienced

counsel). Indeed, courts consistently find that the terms of a settlement are appropriate where the parties, represented by experienced counsel, have engaged in extensive negotiation at an appropriate stage in the litigation and can properly evaluate the strengths and weaknesses of the case and the propriety of the settlement. *See, e.g.*, *In re Employee Benefit Plans Sec. Litig.*, 1993 WL 330595, at *5 (noting that "intensive and contentious negotiations likely result in meritorious settlements . . . ."); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013) (observing that "[s]ettlement agreements are presumptively valid, particularly where a 'settlement has been negotiated at arm's length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters . . . .' ") (citation omitted).

Here, Plaintiff and Group Health have had ample opportunity to test and refine their legal theories through investigation, research, and targeted discovery, as well as a fully briefed, argued, and decided motion to dismiss, to assess the merits of Plaintiffs' claims and Group Health's defenses, and to balance the potential value of Settlement Class Members' claims against prior settlements and the substantial risks and expense of trial.

The settlement negotiations at the May 30, 2024 Settlement Conference were conducted under the supervision of United States Magistrate Judge Dulce J. Foster, who facilitated arms-length negotiations. (Renz Decl. ¶ 11.) The parties exchanged discovery and documents to help them facilitate informed arm's length negotiations and productive settlement discussions. Plaintiffs faced significant risks and challenges in continued litigation. Settlement Class Counsel recommends, for the Court's consideration, preliminary approval of the Settlement because it is well within the range of possible

approval and is fair, reasonable and adequate and in the best interests of the Settlement Class. (*Id.* ¶ 14.)

When, as here, the parties are represented by experienced counsel and rigorous negotiations were conducted at arm's length, the judgment of the litigants and their counsel concerning the adequacy of the Settlement may and should be considered. The extent of the negotiations conducted by Settlement Class Counsel and Group Health's Counsel, Settlement Class Counsel's experience litigating complex class actions, the arm's-length nature of the settlement negotiations, and the fact that the negotiations were overseen by Magistrate Judge Foster, all weigh in favor of preliminary approval of the Settlement.

### C. The Proposed Settlement Satisfies the Standard for Preliminary Approval.

At the preliminary approval stage, "the fair, reasonable and adequate standard is lowered, with emphasis only on whether the settlement is within the *range* of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013) (citation omitted). Courts consider four factors in determining whether a proposed settlement is fair, reasonable and adequate: (1) the merits of plaintiffs' case weighed against the settlement terms; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement.[2] *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.R.D. 922, 932-33 (8th Cir. 2005) (citing *Grunin*, 513 F.2d at 124); *Van Horn*, 840

---

[2] Courts do not consider this factor until notice has been given to Settlement Class Members. *See, e.g.*, *Columbus Drywall Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 560 (N.D. Ga. 2007).

F.2d at 607; *see also Dryer v. Nat'l Football League*, Civ. No. 09-2182 (PAM/AJB), 2013 WL 5888231 5888231, at *2 (D. Minn. 2013). Thus, at this stage, the Court's task is to determine whether the settlement is in the range of possibly meeting these factors.

In the present case, the Settlement reflects both the strengths and weaknesses of the parties' claims and defenses. The fact that Settlement Class Members will receive cash relief across broad categories of damages provides significant benefits to the Settlement Class. The $6,000,000.00 Settlement Fund will be distributed pursuant to a fair Distribution Plan set out in the Settlement Agreement and discussed above. The distribution process will use simple claim forms and a submission process that is administered by an experienced Settlement Administrator. No portion of the $6,000,000.00 Settlement Fund will revert to Group Health.

There is no concern that Group Health will be unable to pay the full amount of the Settlement Fund. In addition, the complexity and expense of further litigation loom quite large in this case. The sheer number of members of the Settlement Class and the complexity of the third-parties related to the Pixel Installation, including Meta, are likely to create considerable expense were this case to continue to be litigated. (Renz Decl. ¶ 10.) Preparing for a contested trial would involve considerable expense. (*Id.*) Similarly, the trial presentation establishing liability would also be heavily expert-driven. (*Id.*) For these reasons, Settlement Class Counsel urge the Court to find that the proposed Settlement is within the range of reasonableness warranting notice to Settlement Class Members and should be preliminarily approved.

The potential class recovery if plaintiffs had fully prevailed on each of their claims is not fully known and uncertain. First, one of the categories of damages are nominal damages, which can range. *Compare Fegans v. Norris*, 537 F.3d 897, 908 (8th Cir. 2008) (awarding $1500 in nominal damages for a constitutional violation) with *MTW Inv. Co. v. Alcovy Properties, Inc.*, 616 S.E.2d 166 (Ga. Ct. App. 2005) (upholding a $635,000 nominal damages award). Second, Plaintiffs' counsel is unaware of any pixel installation/tracking tools case that has gone to verdict to provide a guidepost. (Renz Decl. ¶ 15.) Third, while Plaintiffs' counsel had consulted with experts in this matter, a damage analysis had never been conducted. (*Id.* ¶ 16.)

To Settlement Class Counsel's knowledge, no other cases will be affected by this settlement. (Renz Decl. ¶ 17.)

The Settlement, including the amount of the Settlement Fund is appropriate when comparing the present case to comparable cases. While litigation involving the alleged use of Tracking Tools is relatively new, comparative benchmarks indicate that the value of this action is substantial. Several similar cases with generally comparable class sizes settled for amounts in the range of approximately $4 to $6 per class member. The following chart identifies the similar settlements, including the settlement amount, class size, and per class members recovery:

| Case Name | Case Number | Settlement Amount | Class Size | Per Person |
|---|---|---|---|---|
| *John v. Froedtert Health, Inc.* | No. 23-CV-1935 (Milwaukee County Circuit Court) | $2,000,000 | 459,044 | $4.35 |
| *In re Advocate Aurora Health Pixel Litig.* | No. 22-CV-1253 (E.D. Wis.) | $12,225,000 | 2,540,567 | $4.81 |
| *In re Novant Health, Inc.* | No. 1:22-cv-00697 (M.D.N.C.) | $6,660,000 | 1,361,159 | $4.89 |
| *Doe v. Partners Healthcare System, Inc.* | No. 19-1651 (Superior Court; Commonwealth of Massachusetts) | $18,400,000 | 3,000,000 | $6.13 |
| ***In re Group Health Plan Litig.*** | **No. 23-cv-267 (D. Minn)** | **$6,000,000** | **978,305** | **$6.13** |

These four settlements in similar cases, including Class Counsel's experience in handling the *Froedert, Advocate Aurora,* and *Novant* cases, were instructive in reaching the resolution of this matter. Each of the cases in the foregoing chart have been finally approved.

*Froedert*

**Class Definition**: "All persons who logged into a MyChart patient portal account at least once between February 1, 2017 and May 23, 2023."

**Claims Released**:

Plaintiffs will be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Persons from any and all past, present, and future claims, counterclaims, lawsuits, set-offs, costs, expenses, attorneys' fees and costs, losses, rights, demands, charges, complaints, actions, suits, causes of action, obligations, debts, contracts, penalties, damages, or liabilities of any nature whatsoever, known or unknown, or capable of being known, in law or equity, fixed or contingent, accrued or unaccrued, and matured or not matured that arise out of, or based upon or connected to the Website Usage Disclosure that were or could have been asserted in the Litigation (the "Plaintiffs' Release").

**Notice, Claims, and Distribution Information**: A postcard notice was issued to roughly 435,000 class members via Regular U.S. mail. 48,132 class members submitted valid claims for a claims rate of 10.44%. Each class member submitting a valid claim was issued payment in the amount of $18.77.

**Attorneys' Fees and Expenses**: The attorneys' fees awarded were 35% of the $2,000,000 settlement fund ($700,000) and the approved expenses were $20,302.78.

**Cy Pres Distribution Amount**: $16,093.30.

**Administrative Costs**: Kroll Settlement Administration, LLC provided the settlement administration services for $337,198.32.

**Total Exposure if Every Claim Prevailed**: The maximum exposure for each of the Plaintiffs' claims is difficult to know with any precision. The class had 435,000 members and claims under federal statutes (*e.g.* the Electronic Communications Privacy Act ("ECPA")) were between $50 to $500 per person resulting in $21,750,000 to $217,500,000 in damages in addition to any damages awarded for the common law claims.

*Advocate Aurora*

**Class Definition**:

All individuals residing in the United States whose Personal Information or health information was or may have been disclosed to a third part without authorization or consent through any Tracking Pixel on Defendant's websites, LiveWell App, or MyChart patient portal between October 24, 2017 and October 22, 2022.

**Claims Released**:

Plaintiffs and each Settlement Class Member will be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Persons from any and all past, present, and future claims, counterclaims, lawsuits, set-offs,

costs, expenses, attorneys' fees and costs, losses, rights, demands, charges, complaints, actions, suits, causes of action, obligations, debts, contracts, penalties, damages, or liabilities of any nature whatsoever, known or unknown, or capable of being known, in law or equity, fixed or contingent, accrued or unaccrued, and matured or not matured that arise out of, or based upon or connected to, or relate in any way to the Pixel Disclosure or Defendant's use of Tracking Pixels, or that were or could have been asserted in the Litigation (the "Release").

**Notice, Claims, and Distribution Information**: A postcard notice was issued to roughly 2,540,567 class members via Regular U.S. mail. No email addresses were available for class members. 570,963 class members submitted valid claims for a claims rate of 22%. Each class member submitting a valid claim is projected to receive payment in the amount of $11.54.

**Attorneys' Fees and Expenses**: The attorneys' fees awarded were $2,824,993.19 and the approved expenses were $23,356.02.

**Cy Pres Distribution Amount**: TBD.

**Administrative Costs**: Kroll Settlement Administration, LLC provided the settlement administration services for $2,750,000.

**Total Exposure if Every Claim Prevailed**: The maximum exposure for each of the Plaintiffs' claims is variable.  The class had 2,540,567 members and claims under federal statutes (*e.g.* the Electronic Communications Privacy Act ("ECPA")) were between $50 to $500 per person resulting in roughly $127,000,000 to $1,270,000,000 in potential classwide damages in addition to any damages awarded for the common law claims.

*Novant*

**Class Definition**:

All individuals residing in the United States who Defendant identified as potentially having their personal or health-related information disclosed to a third party because of Defendant's use of certain Internet tracking technology on its websites and MyChart patient portal between May 1, 2020 and August 12, 2022.

**Claims Released**:

Plaintiffs and each Settlement Class Member will be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Persons from any and all past, present, and future claims, counterclaims, lawsuits, set-offs, costs, expenses, attorneys' fees and costs, losses, rights, demands, charges, complaints, actions, suits, causes of action, obligations, debts, contracts, penalties, damages, or liabilities of any nature whatsoever, known or unknown, or capable of being known, in law or equity, fixed or contingent, accrued or unaccrued, and matured or not matured that arise out of, or based upon or connected to, or relate in any way to the Pixel Disclosure or Defendant's use of Tracking Tools, the allegations in the Complaint, or that were or could have been asserted in the Litigation (the "Release").

**Notice, Claims, and Distribution Information**: Email notice was issued to class members via Regular U.S. mail to approximately 1,159,953 of the 1,361,159 class members. A postcard notice with tear off claim form was sent to any class member for whom defendant did not have a valid email address consisting of approximately 199,915 class members. 159,881 class members submitted valid claims for a claims rate of 11.7%. Each class member submitting a valid claim is expected to receive payment in the amount of $23.73.

**Attorneys' Fees and Expenses**: The attorneys' fees awarded were 33.33% of the $6,660,000 settlement fund ($2,220,000) and the approved expenses were $18,134.70.

**Cy Pres Distribution Amount**: TBD

**Administrative Costs**: EisnerAmper provided the settlement administration services for $602,194.55.

**Total Exposure if Every Claim Prevailed**:  The maximum exposure for each of the Plaintiffs' claims is variable.  The class had 1,361,159 members and the claims under North Carolina common law claims (breach of implied contract and breach of fiduciary duty) based on only a nominal damages theory were between roughly $1 to $1,000 per person resulting in roughly $1,361,159 to $1,361,159,000 in potential classwide damages.

 Here, this Settlement represents approximately $6.13 per person ($6 million for approximately 978,305 Settlement Class Members), and as indicated by the chart above, is a settlement amount per class member that equals or exceeds the amount recovered in similarly sized data pixel settlements. Accordingly, the Settlement is within the range of reasonableness warranting preliminary approval.

### D. The Proposed Form and Manner of Notice Are Appropriate.

Under Rule 23(e), class members are entitled to reasonable notice of the proposed Settlement. *See* Manual for Complex Litig. §§ 21.312, 21.631 (4th ed. 2011). Settlement notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Notice need only satisfy the "broad 'reasonableness' standards imposed by due process." *Id.* (quoting *Grunin*, 513 F.2d at 121). Notice need not provide "a complete source of information" or an exact amount of recovery for each class member. *Id.* (citing *DeBoer v. Mellon Mortg.*

*Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995)). The best notice practicable under the circumstances means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice that is mailed to each member of a settlement class "who can be identified through reasonable effort" constitutes reasonable and sufficient notice. *Id.* at 176.

Settlement Class Counsel have hired a highly experienced and well- regarded class action notice and administration firm – Atticus. (Renz Decl. ¶ 4.) The Settlement Administrator was selected from a process that included competitive bids from two settlement administration firms, both of which proposed notice via e-mail to a vast majority of the class and mail notice for those without valid e-mail addresses, as well as a settlement website. (*Id.*) Settlement Class Counsel selected Atticus on the basis of it having the most comprehensive number for the anticipated work for administration. (*Id.*) Settlement Class Counsel have, collectively, engaged with Atticus a number of times over the last two years and on the following cases: *Guarino v Radius Financial Group,* No. 2283CV00196 (Sup. Ct. Plymouth County, Mass.); *Tarrant v Southland Holdings*, Cause No. 067-333679-22 (67th Judicial District, Tarrant County, Texas); *Coon v. JS Autoworld, Inc.*, No. A-23 869272-C (Eighth Judicial District Court, Clark County, Nevada); *Fernandez v. AUS Inc.*, No. BURL000674-24 (Superior Court of New Jersey Law Division, Burlington County); *In re Medical Review Institute of America, LLC, Data Breach Litig.*, Civil No. 2:22CV0082-DAK-DAO (D. Utah); *McManus v. Gerald O. Dry, P.A.*, 23-CVS-001776 (Sup. Ct. Carbarrus County, NC); *Kirtley v. Startek*, No. 1:22-cv-00258-RMR-NRN (D. Colo.). (*Id.*)

Chris Longley, CEO of Atticus, has nearly a decade of experience in class action settlement administration. (Longley Decl. ¶¶ 2-3.)  Since Atticus' inception, it has provided administrative services in over 1,100 cases. (*Id.* ¶ 6.) In Mr. Longley's opinion, the Notice Plan detailed in Distribution Plan "fully and clearly informs class members regarding the settlement." (*Id.* ¶ 8.) The Settlement Administrator has instituted procedures to securely handle Settlement Class Members' data, specifically including instituting a set of operating procedures for the collection and storage of data. (*Id.* ¶ 19, Ex. C.)

Plaintiffs' Class Counsel estimates that there will be a claim rate of approximately 8-14%, which it derived from comparison with comparable settlements, including *In re Novant Health, Inc.*, No. 1:22-cv-00697-CCE-JEP (MD NC) (11.7% claims rate) and *John v. Froedtert Health, Inc.,* No. 23-CV-1935 (Circuit Court, Milwaukee County, WI) (10.44% claims rate). (Renz Decl. ¶ 20.)  The Settlement Administrator believes that this claim rate estimate is a reasonable approximation of what would be anticipated here. (Longley Decl. ¶ 8.)  Plaintiffs' Class Counsel believes that the claims rate is more likely to reflect the *Novant* case than cases like *Advocate Aurora*.  (Renz Decl. ¶ 6.)  These examples of comparable settlements were selected because they are pixel tracking settlements involving health care providers with comparably sized classes, comparable class demographics, comparable benefits offered (most notably pro rata cash payments), and comparably sized settlement funds.  (*Id.* ¶ 20.)

Plaintiffs respectfully submit that this comprehensive notice plan, approved by the Settlement Administrator and with a high approximated claims rate, provides the best

notice practicable under the facts and circumstances of this case and fully satisfies due process requirements. Settlement Class Counsel requests that the Court approve the proposed form and manner of notice to the Settlement Class as set forth in the Notice Plan.

### E. The Request for a Service Award for the Proposed Settlement Class Representatives Is Fair and Reasonable.

Settlement Class Counsel respectfully requests that the Court approve a statement—to be included in the Long Form Notice to the Settlement Class—that Settlement Class Counsel will request the payment of a service award to the Settlement Class Representative in recognition of their service as Class Representatives in this litigation. (Exh. 1 ¶ 64.) Settlement Class Counsel will request up to a $2,500 service award to each of the named Plaintiffs whose service to the Class included providing numerous documents, consulting with counsel pre-litigation, and approving of the ultimate settlement reached. (Renz Decl. ¶ 13.)

Courts recognize the purpose and appropriateness of service awards to class representatives. *See*, *e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522 (PAM/JJK) (approving $20,000 service award to each of five financial institutions class representatives, noting that the service awards were "reasonable"); *White*, 822 F. Supp.at 1406 (noting that "[c]ourts . . . routinely approve such awards for class representatives who expend special efforts that redound to the benefit of absent class members," and collecting cases). "Courts often grant service awards to named plaintiffs in class action suits to promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Caligiuri v. Symantec Corp.*, 855 F.3d 860,

867 (8th Cir. 2017). "Courts in this Circuit regularly grant service awards of $10,000 or greater." *Id.*; *see also Reynolds v. Concordia University*, Civ. No. 21-2560 (JWB/DTS) (D. Minn. May 20, 2024), Order Granting Final Approval of Class Action Settlement and Granting Attorney Fees ¶ 9 (granting $5,000.00 service award).

The proposed Settlement Class Representatives could have simply awaited the outcome of this litigation and may have received the same benefits as any other Settlement Class Member. However, if no one had done so, there would be no benefits whatsoever. Instead, they stepped up to lead this litigation and represent the interests of all Class members. They remained committed to and actively participated in this litigation against a formidable defendant on behalf of a large group of class members. A service payment for the proposed Settlement Class Representative is appropriate.

### F. Settlement Class Counsel Will Seek a Reasonable Amount of Attorneys' Fees and Costs.

Settlement Class Counsel intend to move the Court, 30 days before the Final Approval Hearing, for Attorneys' Fees and Costs. Settlement Class Counsel currently has fees and costs of $901,061.37, of which $3,521.07 is expenses. (Renz Decl. ¶ 19.) At this time, Settlement Class Counsel anticipates seeking an award of fees and costs of $2,000,000.00 (1/3 of the Common Fund), which results in a 2.2x multiplier. (*Id.*)

Settlement Class Counsel's fee request is well within the range of reasonableness for Settlements of this nature and size. *See*, *e.g.*, *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (awarding attorney fees of 36% from a $3.5 million common fund); *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (observing that "courts have

frequently awarded attorneys' fees ranging up to 36% in class action" and affirming award of 38% of the net settlement fund); *Phillips v. Caliber Home Loans, Inc.*, No. 19-CV-2711, 2022 WL 832085, at *7 (D. Minn. Mar. 21, 2022) (awarding one-third of $5,000,000 non-reversionary common fund).

### G. The Cy Pres *Recipient is Appropriate and Unaffiliated with the Parties or Their Counsel.*

The Justice & Democracy Centers of Minnesota is a joint effort of the United States District Court of Minnesota, the Minnesota Chapter of the Federal Bar Association, and the Federal Bar Association's National Foundation. (See www.justicedemocracycentersmn.org/about-us/community-supporters (last visited July 11, 2024).) None of the parties nor their counsel have any relationship with the Justice & Democracy Centers of Minnesota, except that one of the Plaintiffs' firms donated in the initial round of fundraising to establish it. (Renz Decl. ¶ 18.) The only portion of the Settlement Fund that would go to the cy pres recipient are those that remain in the Settlement Fund more than 120 days after the last settlement payment, including re-issued payments. (Exh. 1 ¶ 38.)

## CONCLUSION

For these reasons, Settlement Class Counsel respectfully ask the Court to enter an Order: (1) certifying the Settlement Class for purposes of settlement; (2) appointing Plaintiffs Kelly Vriezen, Sandra Tapp, and Kaye Lockrem as representatives of the Settlement Class; (3) appointing the undersigned counsel as Settlement Class Counsel; (4) granting preliminary approval of the proposed Settlement; (5) approving the proposed

form and manner of notice to the Settlement Class; (6) directing that the notice to the Settlement Class be disseminated by Settlement Administrator, Atticus, in the manner described in the Settlement and in the Declaration of Chris Longley; (7) establishing a deadline for Settlement Class Members to request exclusion from the Settlement Class or file objections to the Settlement; and (8) setting the proposed schedule for completion of further settlement proceedings, including scheduling the final fairness hearing.

Respectfully submitted,

Dated:  August 30, 2024

*s/ Christopher P. Renz*
Bryan L. Bleichner (MN #0326689)
Christopher P. Renz (MN #0313415)
Jeffrey D. Bores (MN #227699)
Philip J. Krzeski (MN #0403291)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
*bbleichner@chestnutcambronne.com*
*crenz@chestnutcambronne.com*
*jbores@chestnutcambronne.com*
*pkrzeski@chestnutcambronne.com*

Gary M. Klinger (admitted *pro hac vice*)
Alexandra M. Honeycutt (admitted *pro hac vice*)
Glen L. Abramson (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
*gklinger@milberg.com*
*ahoneycutt@milberg.com*
*gabramson@milberg.com*

***Interim Co-Lead Counsel for Plaintiffs***

Terence R. Coates (admitted *pro hac vice*)
Dylan J. Gould (admitted *pro hac vice*)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court St., Ste. 530
Cincinnati, Ohio 4502
Telephone: (513) 651-3700
*tcoates@msdlegal.com*
*dgould@msdlegal.com*

Joseph M. Lyon (admitted *pro hac vice*)
**LYON LAW FIRM**
2754 Erie Ave.
Cincinnati, Ohio 45208
Telephone: (513) 381-2333
*jlyon@thelyonfirm.com*

David S. Almeida (admitted *pro hac vice*)
**ALMEIDA LAW GROUP**
849 Webster Ave.
Chicago, Illinois 60614
Telephone: (312) 576-3024
*david@alameidalawgroup.com*

Stephen R. Basser (admitted *pro hac vice*)
Samuel M. Ward* (admitted *pro hac vice*)
**BARRACK RODOS & BACINE**
One America Plaza
600 West Broadway, Suite 900
San Diego, California 92101
Telephone: (619) 230-0800
*sbasser@barrack.com*
*sward@barrack.com*

John Emerson (admitted *pro hac vice*)
**EMERSON FIRM LLP**
2500 Wilcrest, Ste. 300
Dallas, Texas 77042
Phone: (800) 551-8649
*jemerson@emersonfirm.com*

Brian C. Gudmundson (MN #336695)
Jason P. Johnston (MN #0391206)
Michael J. Laird (MN #398436)
Rachel K. Tack (MN #0399529)
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
*brian.gudmundson@zimmreed.com*
*jason.johnston@zimmreed.com*
*michael.laird@zimmreed.com*
*rachel.tack@zimmreed.com*

Hart L. Robinovitch (MN #0240515)
**ZIMMERMAN REED LLP**
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ 85254
Telephone: (480) 348-6400
*hart.robinovitch@zimmreed.com*

Daniel E. Gustafson (MN #202241)
Karla M. Gluek (MN #238399)
David A. Goodwin (MN #386715)
Anthony J. Stauber (MN #401093)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
*dgustafson@gustafsongluek.com*
*kgluek@gustafsongluek.com*
*dgoodwin@gustafsongluek.com*
*tstauber@gustafsongluek.com*

*Counsel for Plaintiffs*